UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DIONEA D.,[1]

                      Plaintiff,

-vs-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

DECISION AND ORDER

19-CV-6653 (CJS)

_____

INTRODUCTION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner") denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Mar. 25, 2020, ECF No. 12; Def.'s Mot., June 30, 2020, ECF No. 18. Plaintiff argues that the Commissioner's denial of her application for DIB and SSI benefits should be reversed because the Commissioner's decision is not supported by substantial evidence. The Commissioner disputes Plaintiff's contentions, and maintains that the ALJ's decision is free of legal error and supported by substantial evidence. For the reasons set forth below,

---

[1] The Court's Standing Order issued on November 18, 2020, indicates in pertinent part that, "[e]ffective immediately, in opinions filed pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

1

Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, the Commissioner's motion [ECF No. 18] is granted, and the Clerk of Court is directed to close this case.

## LEGAL STANDARD

The law defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). In order to qualify for DIB benefits, the DIB claimant must satisfy the requirements for a special insured status. 42 U.S.C. § 423(c)(1). In addition, the Social Security Administration has outlined a "five-step, sequential evaluation process" to determine whether a DIB or SSI claimant is disabled:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)).

The claimant bears the burden of proof for the first four steps of the sequential evaluation. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999).

At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

Plaintiff filed her DIB and SSI applications on January 14, 2016, alleging an onset date of September 29, 2015. Transcript ("Tr."), 76, Dec. 4, 2019, ECF No. 7-3. In her applications, Plaintiff alleged that her ability to work was limited by a left eye hemorrhage, depression, anxiety, diabetes, mental health, and high blood pressure. Tr. 76–77. On May 16, 2016, the Commissioner notified Plaintiff of the determination that Plaintiff was not disabled, and that she did not qualify for either DIB or SSI benefits. Tr. 75. Thereafter, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 97.

Plaintiff's request was approved, and the hearing was held in Rochester, New York on June 26, 2018. Tr. 32. Plaintiff appeared with her counsel, and an impartial vocational expert was also present. Tr. 32. Prior to the hearing, Plaintiff's counsel submitted a "prehearing memorandum" in which he summarized Plaintiff's claim:

> The record as a whole supports that the claimant cannot perform full-time competitive work on a regular and continuing basis due to exertional and nonexertional limitations caused by the combination of her severe physical and mental conditions during the closed period from

3

> January 21, 2014 to March 1, 2018 . . . . The frequency of her [uveitis] flares, periods of depression/anxiety, and uncontrolled hypertension during the closed period support her inability to sustained work, and she should be found disabled at Step 5 based upon the severity of her symptoms during this time frame.

Tr. 273–74.

At the hearing, the ALJ noted that Plaintiff argued for a closed period ending in March 2018, but pointed out that Plaintiff's summary of earnings "shows $20,495 of earnings for that entire year of 2017. That's quite a bit over [substantial gainful activity]." Tr. 39. Thereafter, Plaintiff testified that she had been employed by Finger Lakes DDSO, Easter Seals, and Cerebral Palsy of Rochester during 2017, and maintained employment with the latter two organizations at the time of the hearing. Tr. 44–51. Following the hearing, Plaintiff submitted paperwork to amend her alleged period of disability benefits "to a closed period of disability of 9/29/2015 to 11/1/2016 for my [DIB] claim." Ex. 2, Mar. 25, 2020, ECF No. 12-2.

In his decision on August 22, 2018 denying DIB and SSI benefits to Plaintiff, the ALJ found that Plaintiff met the special insured status requirements of the Social Security Act through December 31, 2020. Tr. 17. At step one of the five-step evaluation process, the ALJ found that Plaintiff engaged in substantial gainful activity beginning January 1, 2017 and continuing through the date of the ALJ's decision. Tr. 17. However, the ALJ also found that there was a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity, namely the onset date of September 29, 2015 through the end of 2016. Tr. 18.

At step two, the ALJ determined that Plaintiff has three severe impairments: intermittent uveitis,[2] hypertension, and obesity. Tr. 18. The ALJ also found that Plaintiff's diabetes mellitus, sleep apnea, and kidney disease are non-severe. Tr. 18–19. The ALJ then utilized the "special technique" required by 20 C.F.R. § 404.1520a,[3] and determined that Plaintiff's alleged mental impairments of depression and anxiety are non-severe. Tr. 19. In making this determination, the ALJ assigned significant weight to the medical opinion of consultative psychological examiner Adam Brownfield, Ph.D., who found "[n]o evidence of limitation in following and understanding simple directions and instructions, performing simple tasks independently, maintaining attention and concentration, maintaining a regular schedule, learning new tasks, performing complex tasks independently, making appropriative decisions, and relating adequately with others." Tr. 385. Dr. Brownfield found Plaintiff was "mildly limited [in] appropriately dealing with stress." Tr. 385.

The ALJ also gave partial weight to the opinion of non-examining state agency

---

[2] According to Stedmans Medical Dictionary, uveitis is "[i]nflammation of the uveal tract: iris, ciliary body, and choroid." "Uveitis," *Stedmans Medical Dictionary* 963280 (database updated Nov. 2014). In layman's terms, "[u]veitis is "swelling and irritation of the . . . . the middle layer of the eye." *Francisco v. Comm'r of Soc. Sec.*, No. 13CV1486 TPG DF, 2015 WL 5316353, at *2 (S.D.N.Y. Sept. 11, 2015).

[3] The listings of specific mental impairments in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1 § 12.00") provide the ALJ with detailed guidance for application of the "special technique." Generally, a claimant must satisfy at least two classes of criteria to justify a finding of a mental disorder. "Paragraph A" criteria include the "the medical criteria that must be present in [a claimaint's] medical evidence" to indicate a particular disorder (e.g., the mental disorder of "schizophrenia" requires that the evidence include medical documentation of hallucinations or another similar symptom). App'x 1 § 12.00A(2)(a). "Paragraph B" criteria are the four functional areas of (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself. App'x 1 § 12.00A(2)(b). "Paragraph C" criteria are used to evaluate whether a claimant has a "serious and persistent" mental disorder.

5

psychological consultant Dr. Ochoa, who concluded on April 26, 2016, that Plaintiff was "without substantial limitation" in the functional areas of understanding and memory, concentration and persistence, and social interaction, but had some difficulty with adaptation. Tr. 387. The ALJ noted that Plaintiff was referred to a partial hospitalization program in September 2016, but that she was discharged later that month "admitting to a decrease in her depression and anxiety." Tr. 20. He noted, too, that by December 2016, Plaintiff was working three jobs and had been more active. Tr. 20.

At step three, the ALJ found that Plaintiff's uveitis, hypertension, and obesity do not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. Tr. 22. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Plaintiff had the residual functional capacity[4] ("RFC") to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b). Tr. 24. Based on this RFC, on Plaintiff's age, education, and experience, and on the testimony of the impartial VE, at step four the ALJ found that Plaintiff is able to perform her past relevant work as an assistant resident manager. Tr. 25. Hence, the ALJ found Plaintiff *was not* disabled for the purposes of DIB or SSI. Tr. 30.

On July 10, 2019, the Social Security Administration's Appeals Council denied Plaintiff's request for further review of the ALJ's decision. Tr. 1. The ALJ's decision

---

[4] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## DISCUSSION

Plaintiff maintains that the Commissioner's decision denying her DIB and SSI benefits must be remanded for further administrative proceedings because the ALJ failed to properly evaluate Plaintiff's mental health impairments, and failed to properly evaluate the functional effects of Plaintiff's eye condition. Pl. Mem. of Law, 14–26, Mar. 25, 2020, ECF No. 12-1.

42 U.S.C. § 405(g) defines the process and scope of judicial review of the final decision of the Commissioner on whether a claimant has a "disability" that would entitle him or her to DIB and SSI benefits. *See also* 42 U.S.C. § 1383(c)(3). "The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the Secretary, and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted).

Hence, it is not the reviewing court's function to determine de novo whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770,

773 (2d Cir. 1999). Provided the correct legal standards are applied, the court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). The substantial evidence standard means that once an ALJ finds facts, we can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448 (citation omitted). To determine whether a finding, inference or conclusion is supported by substantial evidence, "[t]he Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada*, 167 F.3d at 774 (quoting *Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir. 1997)).

<u>The ALJ's Evaluation of Plaintiff's Mental Impairments</u>

As indicated above, the ALJ decided that "[b]ecause the [Plaintiff's] medically determinable mental impairments cause no more than 'mild' limitation in any one of the functional areas, they are non-severe." Tr. 21 (citing 20 C.F.R. § 404.1520a(d)(1)). In reaching this conclusion, the ALJ gave significant weight to the opinion of the

consultative psychological examiner, Dr. Brownfield, and partial weight to the opinion of Dr. Ochoa, the non-examining state agency psychological consultant. Tr. 19–20. Thereafter, the ALJ found Plaintiff had the RFC to perform the full range of light work. Tr. 22. Plaintiff argues the ALJ's evaluation of her mental impairments should be reversed because the ALJ (1) relied on the "stale" medical opinions of Dr. Brownfield and Dr. Ochoa, (2) "cherry-picked" from the evidence of record, and (3) failed to include any limitations related to Plaintiff's mental impairments in his RFC determination. Pl. Mem. of Law at 14–21.

At the outset, the Court notes that there is no unqualified rule that a medical opinion is superseded by additional material in the record. *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016). *See also Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4 (W.D.N.Y. Aug. 14, 2018) ("The mere passage of time does not render an opinion stale."). However, "[a] medical opinion may be stale if it does not account for a plaintiff's deteriorating condition," or fails to account for subsequent medical records and treatment notes which detail plaintiff's significant pain and other limitations. *Jeffords v. Comm'r of Soc. Sec.*, No. 17-CV-1085-MJR, 2019 WL 1723517, at *6-7 (W.D.N.Y. Apr. 18, 2019) (citations omitted). Where an ALJ relies upon a stale opinion with little other supporting evidence, a reviewing court may find that the ALJ's decision is not supported by substantial evidence. *See, e.g., Hidalgo v. Bowen,* 822 F.2d 294, 298 (2d Cir. 1987) (finding the Commissioner's decision was not supported by substantial evidence where the medical opinion upon

9

which the Commissioner relied was based on an incomplete record).

After considering the whole record in the present case, and examining evidence from both sides, the Court finds that the ALJ's decision was supported by substantial evidence. After a full consultative psychological examination of Plaintiff, Dr. Brownfield concluded, in April 2016, that "[t]he results of the evaluation appear to be consistent with psychiatric problems, but . . . [not] significant enough to interfere with [Plaintiff]'s ability to function on a daily basis." Tr. 385. Similarly, non-examining state psychological consultant Dr. Ochoa reviewed Plaintiff's health records through April 2016, and opined that her only significant mental functional limitation was that she "exhibits some difficulty with adaptation but is able to cope with basic changes and make routine decisions." Tr. 85. In addition, Plaintiff reported on October 11, 2016 that she had interviewed for a job (Tr. 1136), on October 20, 2016 that she continued to interview for jobs (Tr. 1162), and on October 27, 2016 that the following week she was set to "begin training for relief positions at three different agencies" (Tr. 1188). In his decision, the ALJ noted that Plaintiff had been working those three jobs as of December 2016. Tr. 20

Treatment notes from Plaintiff's primary care provider, and Plaintiff's subsequent "partial hospitalization," are not of such weight as to render the evidence that the ALJ relied upon as unsubstantial. Notes from Plaintiff's primary care provider include such comments as "unable to return to work at this time" (Tr. 550, note from 12/31/2015), and "[p]atient remains temporarily, completely disabled based

10

on her depression and anxiety symptoms . . . . I think she will be out of work at least until November 1, 2016" (Tr. 521, from June 2, 2016). Further, in September 2016, Plaintiff was referred to Strong Behavioral Health's partial hospitalization program for approximately two weeks. *See, e.g.,* Tr. 807. Nevertheless, the hospitalization was an outpatient program, during which Plaintiff was "eagerly looking for work," and Plaintiff's mental status exams during and after that period show that apart from an anxious affect and depressed mood, Plaintiff's other mental functions appeared to be within normal limits. *See, e.g.,* 979, 1011, 1136. Moreover, the issue as to whether a claimant meets the statutory definition of "disabled" – which requires a showing that Plaintiff is unable to engage in any substantial gainful activity "*for a continuous period of not less than 12 months*" – is reserved to the Commissioner. *See* 20 C.F.R. 404.1527(d)(1) (emphasis added).

With respect to Plaintiff's argument regarding the ALJ's RFC determination, the Court notes that "[an] RFC determination must account for limitations imposed by both severe and nonsevere impairments." *Parker-Grose v. Astrue,* 462 F. App'x 16, 18 (2d Cir. 2012) (citing 20 C.F.R. § 404.1545(a)(2), and § 416.945(a)(2)). Notwithstanding the regulations, in this case the ALJ determined Plaintiff's RFC without accounting for the limitations that the ALJ found to have been caused by her mental impairment. *See* Tr. 21. Thus, the ALJ committed legal error.

However, the Court finds the legal error to be harmless. Here, the ALJ found only one limitation caused by Plaintiff's mental impairment: a "mild" limitation with

11

respect to social interaction. This limitation would not have impacted the RFC determination. *See Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand.").

<u>The ALJ's Evaluation of Plaintiff's Eye Condition</u>

Plaintiff also maintains that the ALJ failed to properly evaluate the functional effects of Plaintiff's eye condition. In particular, Plaintiff maintains that the consultative medical examiner, Dr. Harbinder Toor, "did not formally assess Plaintiff's eye condition," and hence that the ALJ impermissibly relied upon his own lay opinion to determine the make the RFC determination relative to Plaintiff's eyes. Pl. Mem. of Law at 21–22. Plaintiff also argues that the ALJ's RFC determination is improper because he "did not conduct a function-by-function assessment" of Plaintiff's eye condition. Pl. Mem. of Law at 25.

Ordinarily, where the record does not include a medical source statement regarding the functional limitations caused by a claimant's impairment, the ALJ should request a medical source statement containing an opinion regarding the claimant's residual capacity. *See* 20 C.F.R. §§ 404.1513(b)(6), 416.913(b)(6). Yet "remand is not always required when an ALJ fails in his duty to request opinions, particularly where, as here, the record contains sufficient evidence from which an ALJ can assess the petitioner's residual functional capacity." *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013). In addition to a claimant's medical

12

history, including consultative exams if necessary, the ALJ considers "any statements about what [the claimant] can still do that have been provided by medical sources, whether or not they are based on formal medical examinations . . . . [as well as] descriptions and observations of [the claimant's] . . . including limitations that result from [claimant's] symptoms, such as pain, provided by [claimant, claimant's] family, neighbors, friends, or other persons. 20 C.F.R. § 404.1545(a)(3).

The Court finds that, in the present case, the record contains sufficient evidence from which an ALJ can assess Plaintiff's residual functional capacity with respect to her eyes. *Tankisi*, 521 F. App'x at 34. Treatment records from Plaintiff's visit to the ophthalmologist on September 28, 2015 indicate that Plaintiff reported she started having double vision three to four times a day for two weeks prior to her visit, but that "[s]he can blink it away." Tr. 390. The ophthalmologist noted that there was a large hemorrhage beneath the optic nerve on Plaintiff's left eye, and that it was likely related to uncontrolled blood pressure from her underlying diabetes or hypertension. Tr. 466.

At her follow-up appointment in November 2015, the ophthalmologist noted that the hemorrhage was still present, and that Plaintiff still experienced double vision at a distance, but expected it to resolve as Plaintiff got her blood pressure under control with her primary care doctor. Tr. 462. At an April 2016 visit, the double vision occurred only occasionally, at night or when Plaintiff was tired, but the issue with her left eye persisted. Tr. 458. Nonetheless, Plaintiff did not complain of eye issues

13

during her consultative medical examination with Dr. Toor during the same month, and Dr. Toor found no irregularities with her eyes. Tr. 377–380.

By October 2016, Plaintiff reported that she had some eye pain, but was "not experiencing symptoms currently." Tr. 452. Then, in December 2016, Plaintiff was diagnosed with anterior uveitis. Tr. 449. Nevertheless, the record shows – as indicated above – that at the same time as she was diagnosed with anterior uveitis, Plaintiff began to work at three jobs, two of which she maintained through her hearing before the ALJ. In September 2017, for instance, Plaintiff's primary care physician noted that Plaintiff "is not ready to have unrestricted work hours," but that she could work a "40 [hour] work week and no more than 8 [hours each] day." Tr. 1451.

At the hearing, Plaintiff's attorney asked whether her eye condition affected Plaintiff's attendance at work. Tr. 60. Plaintiff admitted that it had, and stated that she was a *per diem* employee, so she just didn't pick a shift if she had a flare up. Tr. 60. While the ALJ noted that this may have led to Plaintiff's being pulled from work from early 2018 to March 2018 (Tr. 17–18), it is not sufficient to demonstrate that Plaintiff was unable to perform substantial gainful activity for a continuous period of twelve months or more.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's motion for judgment on the pleadings [ECF No. 12] is denied, the Commissioner's motion [ECF

No. 18] is granted, and the Clerk of Court is directed to close this case.

DATED: March 8, 2021
Rochester, New York

                                        /s/ Charles J. Siragusa
                                        CHARLES J. SIRAGUSA
                                        United States District Judge